IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| ROBERT S. HILLARD, | ) | 8:10CV225 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| MASTER LOCK COMPANY, and | ) | |
| JOHN DOE, to be sued in both | ) | |
| individual and official capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on Defendant Master Lock Company's ("Master Lock") Motion for Summary Judgment. (Filing No. 45.) Also pending are Master Lock's Motion to Strike (filing no. 54) and Plaintiff's Motion for Sanctions (filing no. 59). As set forth below, Master Lock's Motion to Strike and Plaintiff's Motion for Sanctions are denied; Master Lock's Motion for Summary Judgment is granted.

## I.  BACKGROUND

Plaintiff Robert S. Hillard ("Hillard") filed his Complaint in this matter on June 16, 2010, against Master Lock and John Doe. (Filing No. 1.) On August 17, 2010, the court conducted an initial review of Hillard's Complaint and permitted his claims to proceed to service. (Filing No. 9.) Liberally construed, Hillard alleges that a defective Master Lock brand padlock cut his thumb. (Filing No. 1 at CM/ECF pp. 2-6.) Hillard seeks general and special damages for the injury to his thumb, his lost income and $22,000 for attorney fees. (*Id.* at CM/ECF pp. 5-6.)

On April 14, 2011, Master Lock filed a Motion for Summary Judgment along with a Brief in Support and an Index of Evidence. (Filing Nos. 45, 46, and 47.) Hillard filed a Response to Master Lock's Motion for Summary Judgment along with

a Brief and an Index in Support. (Filing Nos. 48, 49, and 50.) On May 12, 2011, Master Lock filed a Reply Brief in Support of its Motion for Summary Judgment. (Filing No. 51.) Nine days later, Hillard filed a Supplemental Affidavit. (Filing No. 52.) In response to this Affidavit, Master Lock filed a Motion to Strike along with a Brief in Support. (Filing Nos. 54 and 55.)

The party seeking entry of summary judgment in its favor must set forth "a separate statement of material facts about which the moving party contends there is no genuine issue to be tried and that entitles the moving party to judgment as a matter of law." NECivR 56.1(a)(1). If the non-moving party opposes the motion, that party must "include in its [opposing] brief a concise response to the moving party's statement of material facts." NECivR 56.1(b)(1). Such response must "address each numbered paragraph in the movant's statement" of facts and must contain pinpoint citations to evidence supporting the opposition. *Id.* "Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response." *Id.*; *see also* Fed. R. Civ. P. 56(e) ("A supporting or opposing affidavit must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated.").

Master Lock has submitted a statement of material facts and a properly-authenticated Index of Evidence in accordance with the court's Local Rules. Hillard has submitted a Response that generally restates the allegations of his Complaint and a Brief that consists of legal arguments opposing Master Lock's Motion for Summary Judgment. (Filing Nos. 48 and 49.) Neither document provides a "concise response to" Master Lock's statement of material facts. Hillard seeks to address this deficiency with a Supplemental Affidavit. (Filing No. 52.) However, Master Lock has filed a Motion to Strike this Affidavit. (Filing No. 54.) The court will address this Motion to Strike and set forth the relevant undisputed material facts before discussing Master Lock's Motion for Summary Judgment.

2

## II.  MOTION TO STRIKE

On May 27, 2011, Hillard filed a Supplemental Affidavit.  (Filing No. 52.)  In the Supplemental Affidavit, Hillard seeks to add additional facts for the court's consideration.  (*Id*. at CM/ECF p. 1.)  In response, Master Lock has filed a Motion to Strike along with a Brief in Support.  (Filing No. 54.)  Master Lock argues the court should strike Hillard's Affidavit, in total, because he filed it in violation of NECivR 7.0.1(c).  (*Id*.)  Alternatively, Master Lock asks the court to strike certain paragraphs of the Supplemental Affidavit and provide it with leave to file a subrebuttal brief.  (*Id*.)

The court has carefully reviewed Hillard's Supplemental Affidavit and Master Lock's Motion to Strike.  Indeed, Hillard did not seek the court's leave to file a Supplemental Affidavit in violation of NECivR 7.0.1(c).  Nevertheless, because the information contained in Hillard's Supplemental Affidavit does not materially change the outcome of this case, the court elects not to strike it.  Thus, Master Lock's Motion to Strike is denied.  This matter is deemed fully submitted and the court adopts the following relevant material facts.

## III.   RELEVANT MATERIAL FACTS

1.      Hillard is an inmate incarcerated at the Nebraska State Penitentiary ("NSP").

2.      Master Lock is a limited liability company that manufactures padlocks.

3.      In January 2008, Hillard purchased a Master Lock brand padlock at NSP for $13.10.

4.     Before October 2008, Hillard noticed that the shackle of the padlock, or the top hook of the padlock that unhooks from the body of the padlock, was peeling.

5.     From October 2008 to April 2010, Hillard did not use his padlock because he was in the segregation.

6.     On June 3, 2010, after Hillard was released from segregation, he cut his right thumb when he was attempting to unlock his padlock.  Hillard washed the cut out, put a Band-Aid on it and sent a "kite to medical to document it."

7.     On June 4, 2010, Hillard saw a nurse who diagnosed Hillard with a "superficial cut" with no redness or bleeding.  The nurse cleaned the cut and gave him a new Band-Aid. This is the only medical attention Hillard received for the cut.

8.     Hillard did not have to pay any out-of-pocket medical expenses as a result of the June 3, 2010, cut.

9.     At the time of his injury, Hillard held the job of trash cart detail, a position that required him to work 10 to 35 minutes, three times a day.

10.     Hillard did not miss any work as a result of the cut.  In addition, the NSP nurse did not place Hillard on any work restrictions.

11.     Hillard did not specifically seek any mental health treatment for his cut.

(Filing No. 1 at CM/ECF p. 1; Filing No. 21 at CM/ECF p. 1; Filing No. 47-2, Attach. 2 at CM/ECF at Tr. 49-64, 81-112, 117-48; Filing No. 47-3, Attach. 3; Filing No. 47-4, Attach. 4; Filing No. 47-6, Attach. 6; Filing No. 47-7, Attach. 7; Filing No. 47-8, Attach. 8; Filing No. 47-9, Attach. 9; Filing No. 47-10, Attach. 10; Filing No. 47-16, Attach. 16.)

4

# IV.  ANALYSIS

## A.    Standard of Review

Summary judgment should be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a).  It is not the court's function to weigh evidence in the summary judgment record to determine the truth of any factual issue. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51 (1986).  In passing upon a motion for summary judgment, the district court must view the facts in the light most favorable to the party opposing the motion. *Dancy v. Hyster Co.*, 127 F.3d 649, 652 (8th Cir. 1997).

In order to withstand a motion for summary judgment, the nonmoving party must substantiate allegations with "'sufficient probative evidence [that] would permit a finding in [his] favor on more than mere speculation, conjecture, or fantasy.'" *Moody v. St. Charles Cty.*, 23 F.3d 1410, 1412 (8th Cir. 1994) (quoting *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992)).  "A mere scintilla of evidence is insufficient to avoid summary judgment." *Id.*  Essentially the test is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## B.    Master Lock's Motion for Summary Judgment

In its Motion and supporting Brief, Master Lock argues, among other things, that this court lacks subject matter jurisdiction over Hillard's Complaint because the amount in controversy does not exceed $75,000.  (Filing No. 46 at CM/ECF pp. 9-11.)  The court agrees.

5

"If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Hillard asserts that this court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1332, 1333, 1441, 1343, and 1367. (Filing No. 1 at CM/ECF p. 1.) However, state law governs products liability and negligence claims and Hillard does not allege any separate claim arising under federal law. *See Erie R.R. v. Tompkins*, 304 U.S. 64, 78 (1938). Liberally construing the Complaint, Hillard alleges that this court has jurisdiction pursuant to 28 U.S.C. § 1332.

Subject matter jurisdiction may be proper pursuant to 28 U.S.C. § 1332, commonly referred to as "diversity of citizenship" jurisdiction. For purposes of 28 U.S.C. § 1332, "diversity of citizenship" means that "the citizenship of each plaintiff is different from the citizenship of each defendant." *Ryan v. Schneider Nat'l Carriers, Inc.*, 263 F.3d 816, 819 (8th Cir. 2001). In addition, the amount in controversy must be greater than $75,000.00, exclusive of interest and cost, for diversity of citizenship jurisdiction. 28 U.S.C. § 1332(a).

"[A] district court has subject matter jurisdiction in a diversity case when a fact finder could legally conclude from the pleadings and proof adduced to the court before trial, that the damages the plaintiff suffered are greater than $75,000." *Kopp v. Kopp,* 280 F.3d 883, 885 (8th Cir. 2002). Typically, "[a] complaint that alleges the jurisdictional amount in good faith will suffice to confer jurisdiction," but a complaint will be dismissed if it "appears to a legal certainty that the claim is really for less than the jurisdictional amount." *Scottsdale Ins. Co. v. Universal Crop Prot. Alliance*, 620 F.3d 926, 931 (8th Cir. 2010). If the defendant challenges the plaintiff's allegations about the amount in controversy, then the plaintiff must establish jurisdiction by a preponderance of evidence. *Id.* "[A]n amount that a plaintiff claims is not 'in controversy' if no fact finder could legally award it." *Kopp*, 280 F.3d at 885.

6

Here, Hillard seeks general and special damages for the injury to his thumb, lost income and $22,000 for attorney fees. (Filing No. 1 at CM/ECF at pp. 5-6.) However, Hillard has admitted that his injury did not affect his income. (Filing No. 47-2, Attach. 2 at Tr. 131-32; Filing No. 47-11, Attach. 11 at CM/ECF pp. 3-4.) Moreover, as a *pro se* litigant, Hillard is not entitled to an award of attorneys' fees. *See generally Pickholtz v. Rainbow Techs., Inc.*, 284 F.3d 1365, 1375 (Fed. Cir. 2002) (concluding pro se attorneys' fees are not a payable expense "as there is no direct financial cost or charge associated with the expenditure of one's own time."); *Kay v. Ehrler*, 499 U.S. 432 (1991) ("A rule that authorizes awards of counsel fees to pro se litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case."). In light of these findings, Hillard's amount in controversy is limited to the alleged general and special damages associated with his thumb injury.

The evidence before the court shows that Hillard's injury was merely a "superficial" cut. (Filing No. 47-4, Attach 4.) Indeed, after Hillard cut his thumb, he washed it, put a Band-Aid on it and submitted a "kite for medical to document it." (Filing No. 47-2, Attach. 2, Tr. 124-130; Filing No. 47-4, Attach. 4.) Hillard did not seek emergency medical treatment, but rather visited the nurse the next day. (*Id*.) During his visit, the nurse inspected Hillard's cut, declared that it was "superficial," and provided him with a new Band-Aid. (Filing No. 47-4, Attach. 4.) Hillard did not receive stitches and did not seek any mental health treatment for the injury.[1] (Filing

---

[1]The court notes that Hillard has sought mental health treatment for stress associated with "excessive litigation." (Filing No. 47-2, Attach. 2. at Tr. 145-48.) He states that he suffers minor depression from a scar that the cut left, but he is not currently seeking mental health treatment. (*Id*. at CM/ECF pp. 148-49; Filing No. 47-11, Attach. 11 at CM/ECF p. 3.)

No. 47-2, Attach. 2, Tr. 145-48.)  In his Supplemental Affidavit, Hillard states that "he is subject" to further medical treatment related to a "rash" that developed after the cut.  (Filing No. 52 at CM/ECF pp. 4-5.)  Hillard asserts that he is "not ruling out that the proximate cause of" of his "rash" was his cut.  (*Id.* at CM/ECF p. 4.)  However, Hillard has provided no competent evidence to show that his rash was caused by his cut.  Hillard's speculation that his rash is somehow related to his cut is insufficient to avoid summary judgment.  *See Elam v. Regions Financial Corp.*, 601 F.3d 873, 880 (8th Cir. 2010) (stating speculation is insufficient to avoid summary judgment); *Mann v. Yarnell*, 497 F.3d 822, 827 (8th Cir. 2007) (concluding a nonmoving party's allegations or speculations unsupported by specific facts or evidence are insufficient to withstand a motion for summary judgment).

Beyond the aforementioned limited medical treatment, Hillard's out-of-pocket expenses and other special damages include the cost of lotions and vitamins (which were used to help heal the cut), filing fees, copies, postage and a replacement padlock.  (Filing No. 47-11, Attach. 11 at CM/ECF p. 7.)  Even under the most liberal construction, these costs, when added to the evidence of damages in the record, do not establish an amount in controversy greater than $75,000.  Because it appears to a legal certainty that Hillard's claims are for less than $75,000, his Complaint must be dismissed for lack of subject matter jurisdiction.  *See, e.g., DuBose v. Int'l House of Pancakes*, No. 92-2351, 1993 WL 83423 (8th Cir. Mar. 25, 1993) (affirming dismissal for lack of diversity jurisdiction where, based upon the entire record, plaintiff's claims related to coffee scalding injuries were for less than the minimum amount in controversy).[2]

---

[2]In his Response Brief to Master Lock's Motion for Summary Judgment, Hillard argues that the Master Lock waived its right to object to subject matter jurisdiction by admitting subject matter jurisdiction in its Answer. (Filing No. 49 at CM/ECF p. 5.)  Because litigants can neither consent to or waive the right to object to subject matter jurisdiction, Hillard's argument lacks merit. *James Neff Kramper Family Farm P'ship v. IBP, Inc.*, 393 F.3d 828, 834 (8th Cir. 2005).

IT IS THEREFORE ORDERED that:

1.    Master Lock's Motion to Strike (filing no. 54) is denied.

2.    Master Lock's Motion for Summary Judgment (filing no. 45) is granted. Hillard's Complaint is dismissed without prejudice for lack of subject matter jurisdiction.

3.    Hillard's Motion for Sanctions (filing no. 59) is denied as moot.

4.    A separate judgment will be entered in accordance with this Memorandum and Order.

DATED this 9th day of August, 2011.

BY THE COURT:

*Richard G. Kopf*
United States District Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.